OPINION
Appellants Gerald and Brenda Montgomery appeal a judgment of the Richland County Common Pleas Court awarding them damages in the amount of $3,180.36 for breach of a real estate construction contract:
ASSIGNMENTS OF ERROR:
 I. THE TRIAL COURT'S FINDINGS OF FACT ARE ERRONEOUS AND ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED.
 II. THE TRIAL COURT ERRED AS A MATTER OF LAW IN RULING THAT APPELLANTS DID NOT PROVE A VIOLATION OF THE CONSUMER SALES PRACTICES ACT AND BY NOT APPLYING THE LAW TO THE FACTS IN ORDER TO FIND THAT BUILDER FAILED TO PERFORM IN A WORKMANLIKE MANNER.
On October 10, 1995, appellant signed a contract with appellee Rich Glasener for appellee to build them a new ranch-style house for $109,550. At the time, appellee was married to appellant Brenda Montgomery's sister, but by the time of trial, a divorce was pending. Appellants closed on their construction loan on October 12, 1995, and appellee agreed to complete construction within 186 days of closing.
Due to weather conditions during the winter, appellee did not finish the job by mid-April. Appellants agreed to extend the construction time to mid-June, and at approximately that time, appellants moved into the house. Some details of construction remained to be completed.
Water leaked into the basement of the home when it rained. Initially, appellee thought that when the yard, the roof gutter, and the sump pump were installed, the problem would cease. However, the problem with the wet basement continued. Appellee tried several other things including regrading the ground surface away from the house, installing a concrete path sloped away from the garage, and installing a perimeter drain around the edge of the path, which was tied into the footer drain. However, the problem with water continued.
The cause of the water problem was never discovered. Appellee believed that soil washed into the footer drain tile during the substantial winter, that could not be decked and backfilled. He also felt that the house may have been built in an area with a high water table. Appellants believed that appellee used too little gravel around the footer tile, and too little sealant on the outside block wall of the basement.
In addition to the water problem in the basement itself, the water caused excess moisture to infiltrate into the drywall on the first floor of the house. Moisture collected in two closet walls and on doors, windows, and a skylight, producing mold, mildew and rust. In September of 1996, appellee wanted to excavate down to the footer tile on two of the basement walls and on short portions of the remaining two walls, and replace the clogged footer tile and gravel. Because most of the water was coming from a wall which was not to be excavated, and because a basement waterproofing contractor told appellants that appellee's proposed solution would not work, appellants wanted appellee to pay for the basement waterproofing contractor to do the repair. An argument ensued, during which time appellee threatened to remove fixtures or other construction components from the house until appellants paid him the $3,119.64 still owed on the construction contract. Appellants then ordered appellee off of the property.
At this point, both parties hired attorneys, who wrote letters back and forth. Appellee offered to do the wall excavation work at no cost to appellants, and to give them a one-year warranty on the work. Appellants were convinced the work would not last longer than a year and, again, requested appellee to pay $6,300 for the waterproofing contractor to do the work. After about a month of haggling back and forth, appellants gave appellee permission to try the excavation. However, appellee responded that he was now booked for the rest of the fall, and could not do the work until spring.
Appellants were unwilling to live with the problem all winter, and had B'Dri install an interior perimeter drain system below the basement floor in December of 1996, at a cost of $6,300. The basement water problem was resolved. However, the interior moisture problem continued, and would probably continue for a limited period of time until all the moisture dried in the drywall.
Appellants filed the instant action in the Richland County Common Pleas Court. Appellants alleged that appellee breached the construction contract by failing to properly construct the home. They also claimed that pursuant to the Ohio Consumer's Sales Practices Act, they were entitled to recision of the contract and treble damages.
The case proceeded to bench trial. Following trial, the court found that appellants did not demonstrate violation of the Consumer Sales Practices Act, so as to require recision of the contract. However, the court found in favor of appellants on the breach of contract claim, as to the waterproofing of the basement. The court awarded appellants breach of contract damages in the amount of $6,300. In addition, the court found that appellee proved his counterclaim for the remainder of the balance due on the contract, and was entitled to $3,119.64. Accordingly, the court awarded appellants judgment against appellee in the amount of $3,180.36. The court awarded interest on the damages from January 1, 1997, the date by which the repairs were made and paid for by appellants.
 I.
Appellants argue that the court's Finding of Fact that they did not prove that replacement of the windows, doors, and skylights was necessary is against the manifest weight of the evidence. They also argue that the court's finding that there is no evidence that appellee failed to install vapor barriers is against the weight of the evidence.
Where the decision in a case turns upon credibility of testimony, and there exists competent and credible evidence supporting the findings and conclusions of the trial court, deference to such findings must be given by the reviewing court.Myers vs. Garson (1993), 66 Ohio St.3d 610, 614. The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and to use these observations in weighing the credibility of the testimony. Id. at 615.
Appellants' expert testified that he would recommend replacing the windows, doors, and skylights. His recommendation was based on his personal belief that if he was going to stand behind the work he performed, he would feel more comfortable with a complete replacement than with a repair. However, he did not testify that replacement was absolutely necessary. The court specifically noted in its Findings of Fact that the testimony that total replacement was required was unpersuasive. The trial judge was in a better position to judge the credibility of this witness than this court.
Appellants also argue that the court erred in finding that they failed to prove that appellee did not install vapor barriers. However, appellee specifically described the vapor barriers he installed, and it is apparent from the court's Findings of Fact that he believed this testimony.
The judgment is not against the manifest weight of the evidence.
The first Assignment of Error is overruled.
 II.
Appellants first argue that the court erred in failing to find a violation of the Consumers Sales Practices Act, entitling them to recision of the contract.
We first note that pursuant to R.C. 1345.09, appellants were required to elect their remedy prior to trial. Williams vs.Banner Buick, Inc. (1989), 60 Ohio App.3d 128. Appellants never elected between the remedies of recision and/or damages, but rather proceeded on both theories. This is improper under R.C.1345.09.
Nevertheless, we find that the court's finding that appellants failed to prove a violation of the Consumers Sales Practices Act is supported by the evidence. A finding of violation of R.C. 1345.03 may be upheld where a supplier engaged in a pattern of inefficiency, incompetency, and continual stalls.Layne vs. McGowen (May 24, 1995), Montgomery App. No. 14676, unreported. However, there was evidence to support the court's finding that in the instant case, appellee repeatedly attempted to remedy the problem following the argument between the parties, which ended in appellee being ordered from the property by appellants.
Appellants also argue that the court erred in awarding interest from January 1, 1997, rather than June 16, 1996, which was the approximate date on which they moved into the property. The proper measure of interest for breach of contract is ten percent per annum, from the date when money becomes due and payable. R.C. 1343.03(A). In the instant case, the money for repair of the basement did not become due and payable until the successful repair was made and paid for by appellants. Until that date, the measure of damages was not capable of being ascertained, as the problem remained unsolved.
The second Assignment of Error is overruled.
The judgment of the Richland County Common Pleas Court is affirmed.
By: Reader, J., Gwin, P. J. and Wise, J. concur.
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Richland County Common Pleas Court is affirmed. Costs to appellant.